1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

GARY HARDEMAN,

        Defendant.

_____/

No. CR 08-0847 WHA

**ORDER DENYING MOTION TO DISMISS INDICTMENT**

**INTRODUCTION**

In this federal prosecution for failure to register as a sex offender under the Sex Offender Registration and Notification Act, defendant moves to dismiss the indictment on the grounds that the Act violates the Commerce Clause and that he was not in fact required to register as a sex offender under the Act. For the reasons stated below, defendant's motion to dismiss the indictment is **DENIED**.

**STATEMENT**

In November 2008, defendant Gary Hardeman was indicted on one count of failure to register as a sex offender between October 23, 2007, and February 21, 2008. The indictment alleges that defendant was required to register under the Sex Offender Registration and Notification Act, 18 U.S.C. 2250(a), traveled in interstate commerce (to Mexico) and thereafter failed to register.

The criminal complaint explains that in April 1980, defendant was convicted under California Penal Code Section 288 for lewd and lascivious acts upon a child, and that in

1  October 1986, defendant was convicted under California Penal Code 647a for annoying and

2  molesting children.

3        The complaint alleges that, as a result of these convictions, defendant was required by

4  California law and SORNA to register as a sex offender.  Defendant was contacted by San

5  Francisco Police Detective Jim Serna in September 2007 regarding defendant's failure to

6  register; defendant explained that the criminal convictions had been expunged, and he therefore

7  believed that he was not required to register.  Detective Serna informed him that,

8  notwithstanding the expungement of his criminal convictions, California law nevertheless

9  required him to register.  Defendant signed a Notice of Sex Offender Registration Requirement

10  acknowledging his lifelong responsibility to register as a sex offender and to update his

11  registration at specified times.

12        The complaint indicates that defendant has traveled to Mexico during the winter each of

13  the past seven years, most recently, departing for Mexico City on October 23, 2007, and

14  returning February 18, 2008.  As of November 3, 2008, defendant had failed to register as a sex

15  offender.  Defendant was indicted soon thereafter.

16                                      **ANALYSIS**

17        Congress enacted the Sex Offender Registration and Notification Act ("SORNA" or

18  "Act") in July 2006.  The Act's stated purpose is as follows:  "to protect the public from sex

19  offenders and offenders against children . . . Congress in this chapter establishes a

20  comprehensive national system for the registration of those offenders."  42 U.S.C. 16901.  It

21  mandated that each state maintain a sex offender registry and provided certain minimum

22  requirements for the states' registration systems.  *Id*. at §§ 16911–16918.  SORNA

23  supplemented earlier sex offender legislation promulgated in the Jacob Wetterling Act, which

24  had provided incentives for states to enact sex offender registration laws.  By 1996, every state

25  and the District of Columbia had enacted such laws.

26        SORNA contained a registration requirement, 42 U.S.C. 16913, and created criminal

27  penalties for failing to register in accordance with those requirements.  18 U.S.C. 2250(a).

28  Section 16913 required that "[a] sex offender shall register, and keep the registration current, in

United States District Court
For the Northern District of California

2

each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student."  According to this provision, therefore, federal law required offenders to register under the appropriate state's existing registration system.  The term "sex offender" was defined as "an individual who was convicted" of certain enumerated categories of crimes.  § 16911(1), (5).  Section 16913 also prescribed, *inter alia*, requirements for the timing for initial registration and for keeping the registration current.

Section 2250(a), in turn, created the crime of failure to register, which subjects the following persons to criminal penalties:

> Whoever--
>
> (1) is required to register under the Sex Offender Registration and Notification Act;
>
> (2)(A) is a sex offender . . . by reason of a conviction under Federal law . . .; or (B) *travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country*; and
>
> (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

18 U.S.C. 2250(a) (emphasis added).

Defendant moves to dismiss the indictment on the grounds (1) that SORNA violates the Commerce Clause in multiple respects, and (2) that at all events he was not a "sex offender" (and thus required to register) within the meaning of the Act because the alleged predicate convictions had been dismissed, and contrary interpretation of the Act would result in a prosecution that contravenes his constitutional rights under *Apprendi*.

**1.   COMMERCE CLAUSE.**

Defendant contends that both SORNA's criminal-enforcement provision, 18 U.S.C. 2250(a), and its registration requirement, 42 U.S.C. 16913, violate the Commerce Clause.  The government responds that both are a valid exercise of Congress' authority under the Commerce Clause, and that Section 16913 is also justified under the Necessary and Proper Clause as a means to execute a congressional purpose otherwise justified under the Commerce Clause.

The Supreme Court has "identified three broad categories of activity that Congress may regulate under its commerce power":  (1) "the channels of interstate commerce;" (2) the

instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities; and (3) "activities that substantially affect interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558 (1995). The government contends that SORNA is valid under the first two *Lopez* prongs. It stated in its briefing, and confirmed at the hearing, that it does not defend the constitutionality of SORNA under the third *Lopez* prong.

### A.    Section 2250(a).

Defendant alleges that Section 2250(a) cannot be sustained as a regulation of the channels of interstate commerce, nor of the instrumentalities of commerce or persons or things in interstate commerce, because the criminal provision requires no nexus whatsoever between the jurisdictional interstate travel requirement and the crime or *actus reus* itself, *i.e.*, failure to register when required to do so. The government responds that Section 2250(a) falls within the Commerce Clause power because it contains a jurisdictional element linking its reach to the use or movement of people in the channels of interstate commerce — the statutory requirement that a defendant have traveled "in interstate or foreign commerce."

Two district judges have found SORNA unconstitutional (at least in part) as unjustified under the first two *Lopez* prongs. *United States v. Myers*, 2008 WL 5156671 (S.D. Fla. 2008) ("The jurisdictional element of 'interstate travel' is an indefinite requirement that only requires a person to have traveled in interstate commerce. The purpose attached to the travel is left unstated and is utterly divorced from the activity being regulated: knowingly failing to register as a sex offender"); *United States v. Powers*, 544 F. Supp. 2d 1331, 1333–34 (M.D. Fla. 2008) ("we are clearly not dealing with the regulation of channels or instrumentalities of commerce. Nor are we dealing with the regulation of persons or things in interstate commerce. This is not a case where the interstate travel is intended to further the crime itself").

Numerous decisions, however, have sustained the Act under the first two *Lopez* prongs. *See, e.g.*, *United States v. May*, 535 F.3d 912 (8th Cir. 2008); *United States v. Lawrance*, 548 F.3d 1329 (10th Cir. 2008); *United States v. Beasley*, 2007 WL 3489999, * 9 (N.D. Ga. 2007).

United States District Court

For the Northern District of California

1    It is true that the statute requires no nexus between the travel requirement and the

2    proscribed conduct.  The Eighth Circuit upheld SORNA under the first two *Lopez* prongs,

3    explaining that:

4    > Congress may forbid or punish use of interstate commerce "as an
     > agency to promote immorality, dishonesty or the spread of any

5    > evil or harm to the people of other states from the state of origin" .
     > . . .  Congressional regulation of the channels of interstate

6    > commerce has also been upheld when the punishment "was
     > intended to prevent the use of interstate commerce to facilitate ...

7    > forms of immorality."

8    *May*, 535 F.3d at 921–22 (quoting *Brooks v. United States*, 267 U.S. 432, 436 (1925)).  *See also*

9    *United States v. Lawrance*, 548 F.3d 1329 (10th Cir. 2008) (similar).  SORNA, however, may

10   well reach situations where interstate commerce was neither used as an agency to promote

11   immorality nor to spread evil or harm to other states — for example, if a defendant traveled

12   across state lines *only* prior to committing a sex offense and being required to register.  *See*

13   *United States v. Myers*, 2008 WL 5156671 (S.D. Fla. 2008) (analyzing Section 2250(a)'s

14   potentially expansive reach under each *Lopez* prong).[1]

15   The closest analogy may be found in *Scarborough v. United States*, 431 U.S. 563

16   (1977).  That decision upheld a gun control statute reaching anyone who "receives" or

17   "possesses" a firearm "in commerce or affecting commerce," explaining that the decision

18   "[saw] no indication that Congress intended to require any more than the minimal nexus that the

19   firearm have been, at some time, in interstate commerce."  *Id.* at 575.  This holding has been

20   termed the "minimal nexus" requirement.  The continuing viability of *Scarborough* has been

21   questioned given the Supreme Court's later, arguably more restrictive, interpretations of the

22   Commerce Clause, *see Myers*, 2008 WL 5156671, at * 27–33 (summarizing *Scarborough's*

23

24   [1] The Supreme Court has suggested that it would reject an interpretation of the Commerce Clause
     under which *any* passage of goods or people through interstate commerce, no matter how attenuated from the

25   conduct being regulated, will salvage a statute.  In *Jones v. United States*, 529 U.S. 848 (2000), the Supreme
     Court rejected the argument that private residential homes could be deemed "used in . . . any activity affecting

26   interstate or foreign commerce" because, the decision explained, a contrary interpretation would raise
     Commerce Clause concerns:  "hardly a building in the land would fall outside the federal statute's domain.

27   Practically every building . . . is constructed with supplies that have moved in interstate commerce, served by
     utilities that have an interstate connection, financed or insured by enterprises that do business across state lines,

28   or bears some other trace of interstate commerce."  As *Myers, supra*, noted, SORNA could be read to cover
     similarly attenuated and far-reaching connections to interstate commerce.

United States District Court

For the Northern District of California

1    subsequent history), but the decision has never been overruled and continues to be applied in

2    the appellate courts.  *See*, *e.g.*, *United States v. Paopao*, 469 F.3d 760, 768 (9th Cir. 2006).  The

3    present statute, however, could be even more troubling.  *Scarborough's* jurisdictional language,

4    "in *and affecting* commerce," is understood to invoke the full reach of Congress's commerce

5    clause authority, including under the third *Lopez* prong, whereas SORNA contains no such

6    language and is only defended under the first two prongs.  *See Scarborough*, 431 U.S. at 571

7    ("Congress is aware of the distinction between legislation limited to activities 'in commerce'

8    and an assertion of its full Commerce Clause power so as to cover all activity substantially

9    affecting interstate commerce") (internal quotation and citation omitted).  Moreover, in

10   *Scarborough* and its progeny, the regulated item itself traveled in interstate commerce, whereas

11   SORNA, as explained, could be interpreted to assert jurisdiction over individuals who have not

12   traveled while regulated.

13           For the following reasons, however, the allegations here are sufficient.  Defendant is

14   alleged to have traveled in interstate commerce *after* he became a sex offender and was required

15   to register, *after* he was notified of and acknowledged his duty to register, and *after* he

16   nevertheless failed to register.  In this situation, the proscription on the failure to register falls

17   within Congress' power to regulate interstate commerce.  It falls comfortably within Congress'

18   power to "impose relevant conditions and requirements on those who use the channels of

19   interstate commerce in order that those channels will not become the means of promoting or

20   spreading evil, whether of a physical, moral or economic nature."  *United States v. Lawrance*,

21   548 F.3d 1329, 1337 (10th Cir. 2008) (citing *N. Am. Co. v. Secs. and Exch. Comm'n*, 327 U.S.

22   686, 705 (1946)).  It is true that SORNA does not require that the travel be undertaken, for

23   example, with the purpose to engage in the proscribed conduct or in furtherance of some

24   harmful end.  *See Powers*, 544 F. Supp. 2d at 1334 n.3 (collecting cases regarding statutes with

25   such limitations). Such a qualifier, however, is not necessarily required, particularly where the

26   regulated item or person itself has traveled (or was wrongfully prevented from traveling) in

27   interstate commerce.  *United States v. Paopao*, 469 F.3d 760, 767–68 (guns) (9th Cir. 2006);

28   *United States v. Mussari*, 95 F.3d 787 (9th Cir. 1996) (interstate child support); *United States v.*

*Reynard*, 473 F.3d 1008 (9th Cir. 2007) (DNA samples).  Once a defendant is actually required to register and thereafter travels in interstate commerce, the person falls within the Commerce Clause power as a regulated person or thing in interstate commerce, much like the guns, child support payments and DNA samples in the above-cited cases.

Defendant's motion, although stating as much only in passing, is framed as a facial challenge to the constitutionality of Section 2250(a) rather than as-applied to him.  The Supreme Court has explained, however, that the inclusion of a jurisdictional element allows courts to consider the sufficiency of the nexus to interstate travel on a case-by-case basis. *United States v. Lopez*, 514 U.S. 549, 561 (1995).  *See also United States v. Cummings*, 281 F.3d 1046, 1049 (9th Cir. 2002); *United States v. Hanna*, 55 F.3d 1456 (9th Cir. 1995).  Here, the predicate offenses occurred in 1980 and 1986, respectively, and defendant has since been a sex offender required to register.[2]  Defendant, allegedly, was specifically informed of his duty to register and nevertheless failed to do so.  He traveled in interstate commerce *after* being required to register and knowingly failing to do so.  Under these circumstances, the indictment falls within the Commerce Clause power.  This order need not consider whether Section 2250(a) might contravene that authority as applied to a different defendant in different circumstances.

### B.    Section 16913.

As stated, Section 16913 provides SORNA's registration requirement:  "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student."  Defendant maintains that Section 16913 is itself an invalid exercise of Congressional authority and, because registration under Section 16913 is an element of the crime, the indictment must be invalid. Section 16913 imposes registration obligations on sex offenders independent of Section 2250(a), defendant emphasizes, and the provision therefore must independently withstand scrutiny under the Commerce Clause.  Section 16913 is unconstitutional, defendant insists, because it (unlike Section 2250(a)) has no jurisdictional "hook" linking it to interstate

---

[2] Defendant's argument to the contrary is discussed *infra*.

United States District Court

For the Northern District of California

1    commerce and, as courts have noted, Congress made little effort to justify the provision under

2    *Lopez's* third prong as effecting interstate commerce.

3          This, once again, is an issue on which courts are divided.  A few decisions have found

4    the section wanting, based on an analysis of Section 16913 standing alone.  *United States v.*

5    *Waybright*, 561 F. Supp. 2d 1154, 1162–63 (D. Mont. 2008); *United States v. Hall*, 577 F.

6    Supp. 2d 610 (N.D.N.Y. 2008); *United States v. Guzman*, 2008 WL 4601446 (N.D.N.Y. 2008);

7    *United States v. Myers*, 2008 WL 5156671 (S.D. Fla. 2008).  Many, however, have upheld the

8    provision — either concluding that it should be analyzed jointly with Section 2250(a) as a

9    comprehensive scheme, or under the Necessary and Proper Clause, or a combination thereof.

10   *See, e.g., United States v. Howell*, 2009 WL 66068 (8th Cir. 2009); *United States v. Vardaro*,

11   575 F. Supp. 2d 1179, 1187–88 (D. Mont. 2008) (collecting cases).

12         Section 16913, standing alone, would be difficult to justify under the Commerce

13   Clause — it contains no jurisdictional nexus and reaches purely local conduct not readily

14   deemed "commercial" in character.  This order, however, is unwilling to separate Section 16913

15   from Section 2250(a) and scrutinize the former, alone, under the *Lopez* factors.  The two were

16   passed in the same statute, the Adam Walsh Child Protection and Safety Act of 2006, Pub. L.

17   No. 109-248, 120 Stat. 587, and both are deemed part of the Sex Offender Registration and

18   Notification Act.  *See* 42 U.S.C. 16901, Short Title Notes.  Although codified in different

19   portions of the United States Code, the two are inherently part of a unified scheme.  Indeed,

20   neither would make sense — or have any effect whatsoever — absent the other.  Section 16913

21   merely requires offenders, as a matter of federal law, to register under the appropriate *state's*

22   existing registration system, with *no* corresponding federal enforcement mechanism other than

23   the criminal provision.  It would be an empty, unenforceable federal obligation absent the

24   criminal sanction.  Section 2250(a), in turn, applies only to those who are required to register

25   under Section 16913; it too does not and cannot stand alone.

26         Defendant is correct that SORNA is not as narrowly tailored as it could be — for

27   example, it could have been drafted to require registration, as matter of federal law, only if an

28   offender were to travel across state lines.  Defendant is also correct that Section 16913

8

nominally impose a federal registration requirement on him whether or not he in fact traveled across state lines, and whether or not he was prosecuted under Section 2250(a). He is subject to no federal sanction, however, until and unless he travels across state lines. If he remained in-state, his registration status would have remained predominantly a matter of state concern; the obligations federal law placed upon him were intended to ensure that he could not evade registration if he *were* to cross state lines. 42 U.S.C. 16901; *Howell*, 2009 WL 66068, at * 6 (compiling legislative history). *See also United States v. Reynard*, 473 F.3d 1008, 1023–24 (9th Cir. 2007) ("[c]ourts have consistently recognized that federal statutes enacted to help states address problems that defy a local solution constitute an appropriate exercise of Congress's Commerce Clause power"). The Constitution does not require Congress to chose the *best* or most narrowly tailored means for achieving an otherwise-authorized goal; it requires only that the means be "conducive to" the proper ends and "plainly adapted to" those ends. *Jinks v. Richland County*, 538 U.S. 456, 462 (2003).

This order agrees with those courts that have found Section 16913 justified, at a minimum, under the Necessary and Proper clause as a reasonable means to accomplish legitimate ends under the Commerce Clause:

> Although § 16913 may reach a wholly intrastate sex offender for registry information, § 16913 is a reasonable means to track those offenders if they move across state lines. In order to monitor the interstate movement of sex offenders, the government must know both where the offender has moved and where the offender originated. Without knowing an offender's initial location, there is nothing to ensure the government would know if the sex offender moved. The registration requirements are reasonably adapted to the legitimate end of regulating " 'persons or things in interstate commerce' " and " 'the use of the channels of interstate commerce.'

*Howell*, 2009 WL 66068, at * 6. This order, therefore, rejects the contention that Section 16913 is unconstitutional.

**2. DEFENDANT'S PREDICATE CONVICTIONS.**

Defendant's final challenge to the indictment arises from the fact that his predicate state convictions were subsequently dismissed under California law. Defendant contends that, because those offenses were dismissed, they do not qualify him as a "sex offender" under

United States District Court

For the Northern District of California

9

United States District Court

For the Northern District of California

1   SORNA, and an interpretation of SORNA under which they *did* qualify him as a sex offender

2   would violate *Apprendi*.

3          As stated, SORNA requires that "[a] *sex offender* shall register . . . ." 42 U.S.C. 16913

4   (emphasis added). The term "sex offender" is defined as "an individual who *was convicted*" of

5   certain enumerated predicate sex offenses. *Id*. at § 16911(1), (5) (emphasis added). As

6   authorized by the Act, the Attorney General has issued regulations under SORNA that, *inter*

7   *alia*, interpret the statute's "conviction" requirement as follows:

8               The proposed guidelines stated that SORNA's requirements are
                not waived by nominal or terminological variations in the
9               designations that jurisdictions use in referring to the dispositions
                of criminal cases. For example, SORNA's requirements remain
10              applicable if a jurisdiction has a procedure under which certain
                sex offense convictions . . . are referred to as something other than
11              "convictions," or are nominally "vacated" or "set aside," but the
                sex offender remains subject to penal consequences based on the
12              conviction.
                                    *         *         *
13              SORNA's requirements apply to anyone who "was convicted of a
                sex offense" . . . . While the statutory definitions of sex offenses
14              falling within SORNA's registration categories, see SORNA §
                111(5)-(8), will vary from jurisdiction to jurisdiction, the meaning
15              of "convicted" for purposes of SORNA is a matter of federal law,
                and its applicability is not determined by the terminology a
16              jurisdiction uses in referring to the disposition of a criminal case.

17   73 Fed. Reg. 38030, 38039–40 (2008).

18         The complaint and indictment allege that defendant is a "sex offender" required to

19   register on account of predicate convictions (by guilty plea or jury verdict) in 1980 and 1986.

20   Those convictions, both sides agree, were dismissed pursuant to the following state provision:

21              In any case in which a defendant has fulfilled the conditions of
                probation for the entire period of probation, or has been
22              discharged prior to the termination of the period of probation, or
                in any other case in which a court, in its discretion and the
23              interests of justice, determines that a defendant should be granted
                the relief available under this section, the defendant shall . . . be
24              *permitted by the court to withdraw his or her plea of guilty or
                plea of nolo contendere and enter a plea of not guilty; or, if he or
25              she has been convicted after a plea of not guilty, the court shall
                set aside the verdict of guilty; and, in either case, the court shall
26              thereupon dismiss the accusations or information* against the
                defendant and except as noted above . . . . However, in any
27              subsequent prosecution of the defendant for any other offense, the
                prior conviction may be pleaded and proved and shall have the
28              same effect as if probation had not been granted or the accusation
                or information dismissed.

10

1 Cal. Penal Code § 1203.4(a) (emphasis added).

2   This order declines to set aside the indictment based on the subsequent dismissal of

3 defendant's predicate convictions.  The plain language of SORNA requires only that defendant

4 "was convicted."  As the government notes, in other analogous criminal provisions, Congress

5 has included exemptions for predicate convictions that were expunged or set aside, but

6 Congress provided no such carve-out in SORNA.  *See* 18 U.S.C. 921(a)(20).[3]  Defendant "was

7 convicted" of a predicate offense before those predicate offenses were, for some unknown

8 reason, set aside under Section 1203.4(a).

9   The Attorney General's interpretation of the conviction requirement, moreover, is

10 inconclusive at best as to defendant's circumstance.  Defendant places substantial emphasis on

11 the fact that he was subjected to no "penal consequences" following dismissal of the state

12 convictions under Section 1203.4(a).  The regulation, however, referenced penal consequences

13 only in an "example;" it emphasized that the "conviction" requirement is a matter of federal

14 rather than state law; and it stated that the Act's requirements were "not waived by nominal or

15 terminological variations in the designations that jurisdictions use in referring to the

16 dispositions of criminal cases."  Defendant is unable to derive substantial refuge from the

17 regulation.

18   The state provision under which defendant's conviction was dismissed did not itself

19 purport to wipe out all subsequent ramifications of the dismissal; in fact, it stated the opposite:

20 "in any subsequent prosecution of the defendant for any other offense, the prior conviction may

21 be pleaded and proved and shall have the same effect as if probation had not been granted or the

22 accusation or information dismissed."  Cal. Penal Code § 1203.4(a).  *Cf. Jennings v. Mukasey*,

23 511 F.3d 894 (9th Cir. 2007) (discussing the effects of a Section 1203.4 dismissal in the context

24 of the Gun Control Act).

25

26

27    [3] Section 921(a)(20) states, in relevant part, "[w]hat constitutes a conviction of such a crime shall be

28 determined in accordance with the law of the jurisdiction in which the proceedings were held.  Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter."

United States District Court
For the Northern District of California

**United States District Court**

For the Northern District of California

1    Nor must the indictment be dismissed under *United States v. Apprendi*, 530 U.S. 466

2   (2000). *Apprendi* ruled that "*[o]ther than the fact of a prior conviction*, any fact that increases

3   the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury,

4   and proved beyond a reasonable doubt." *Id.* at 490 (emphasis added). *Apprendi*, therefore,

5   specifically exempted "the fact of prior conviction" from those "facts" which must be proven

6   beyond a reasonable doubt. In any event, the dispute, at this stage, is not precisely whether

7   defendant was, in fact, convicted but rather whether a conviction subsequently withdrawn under

8   Section 1203.4(a) constitutes a "conviction" under SORNA. That is a question of statutory

9   interpretation, not a "fact" for the jury.

10    At this stage, it is unclear why precisely defendant's convictions were set aside under

11   Section 1203.4(a) and what "penal consequences" defendant suffered as a result of the

12   convictions before they were set aside. For these reasons, this order is unable to conclude as a

13   matter of law that the subsequent dismissal of a state conviction pursuant to Penal Code §

14   1203.4(a) necessarily withdraws that conviction from the ambit of SORNA, nor that a Section

15   2250(a) prosecution founded upon such a prior conviction violates *Apprendi*.

**CONCLUSION**

17    For all of the above-stated reasons, defendant's motion to dismiss the indictment is

18   **DENIED**.

20    **IT IS SO ORDERED.**

22   Dated: January 23, 2009

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE